**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____ )
                                     )
NELSON J. MEZERHANE GOSEN,      )
                                       )
           Plaintiff,          )
                                       )
          v.                  )     Civil Action No. 13-CV-1091 (KBJ)
                                       )
UNITED STATES CITIZENSHIP       )
AND IMMIGRATION SERVICES,      )
                                       )
           Defendant.      )
                                       )
_____ )

**<u>MEMORANDUM OPINION</u>**

      Plaintiff Nelson Mezerhane Gosen ("Mezerhane Gosen") is the former owner of

the Venezuelan television station Globovisión and a critic of the current Venezuelan

regime. In August of 2010, Mezerhane Gosen applied for asylum in the United States,

claiming politically-motivated persecution. After three years passed and a final asylum

status determination still had not been issued, Mezerhane Gosen filed a document

request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking all

information related to his application for asylum in the United States. In response to

this request, Defendant U.S. Citizenship and Immigration Services ("USCIS") initially

released 498 pages in full, and also partially or fully withheld an additional 139 pages

of responsive documents. (Compl. ¶ 8.) Some back and forth between the parties

ensued; 77 pages of responsive documents remain at issue at this point.

      Before this Court at present are the parties' cross-motions for summary

judgment. (*See* Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 17; Pl.'s Opp'n to

Def.'s Mot. and X-Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 20.) USCIS maintains

that it has properly withheld the remaining contested documents on the basis of FOIA

Exemptions 5, 6, 7(C), and 7(E) because those documents are subject to the deliberative process privilege, or implicate substantial privacy interests that are not outweighed by any public interest, or could potentially reveal sensitive information about law enforcement techniques.  Mezerhane Gosen responds that the remaining contested documents are being withheld improperly, and probably so because they are likely to reveal impropriety in the handling of his asylum application.  (*See* Pl.'s Mem. of P&A in Supp. of Pl.'s Mot. ("Pl.'s Mem."), ECF No. 20-1, at 7 ("There is concrete evidence of troubling Agency behavior and lack of compliance with Agency regulations in this case that cannot be fully uncovered without the transparency that FOIA requires.").) [1]

On October 16, 2014, this Court ordered that USCIS provide to the Court all 77 contested pages for *in camera* review.  Having now had the opportunity to review these documents—and also having reviewed the recent opinion of another judge in this district in an essentially identical FOIA case involving Mezerhane Gosen's daughter, *see Mezerhane de Schnapp v. USCIS*, No. CV 13-1461, 2014 WL 4436925, at *1 (D.D.C. Sept. 9, 2014) (Bates, J.)—this Court concludes that Defendant's motion for summary judgment must be **GRANTED IN PART** because FOIA Exemptions 6, 7(C), and 7(E) were properly applied.  However, given that there remains a genuine dispute of material fact as to the applicability of Exemption 5, Defendant's motion for summary judgment will be **DENIED IN PART**, and Plaintiff's motion for summary judgment will be **DENIED** in full.  A separate order consistent with this opinion will follow.

## I.    BACKGROUND

As noted above, Mezerhane Gosen is a Venezuelan television executive who sought asylum in the United States, along with other members of his immediate family,

---

[1] Page numbers throughout this Opinion refer to those that the Court's electronic filing system assigns.

in order to escape from alleged political persecution in his native Venezuela.  (Compl.
¶ 6.)  In March of 2013, after none of Plaintiff's family members had heard anything
from USCIS about the status of their asylum applications, Plaintiff filed a FOIA request
specifically seeking his complete "A-File."  (*Id.* ¶ 7.)  An A-File (short for "Alien
File") is a record that contains all documents and information related to a person's
interactions with the U.S. immigration system.  (Decl. of Jill A. Eggleston ("Eggleston
Decl."), ECF No. 17-3, ¶ 9 n.2.)

In May of 2013, USCIS released 498 pages of documents to Plaintiff, withheld
partially 84 pages, and withheld fully 55 pages.  (Compl. ¶ 8.)[2]  These documents were
purportedly withheld pursuant to FOIA Exemptions 5, 6, 7(C), and 7(E).  (*Id.*)  On May
10, 2013, Plaintiff filed an administrative appeal, challenging the 139 withheld or
redacted documents (*id.* ¶ 9), and USCIS responded by partially releasing four
documents that had previously been fully withheld (*id.* ¶ 10).  Shortly thereafter, on
July 16, 2013, Plaintiff filed the instant case.  Since this suit was filed, both parties
have managed to negotiate the number of contested documents down to 77 pages—47
that have been fully withheld and 30 that are partially withheld.  (Eggleston Decl. ¶ 22.)

On November 25, 2013, Plaintiff finally received a letter informing him that he
had been granted asylum.  (Pl.'s Mem. at 7-8.)  However, Plaintiff asserts that USCIS
actually granted his asylum application in September of 2010—three years earlier and a
mere six weeks after he filed his asylum application—but, for some reason, the agency
had refused to act on its decision at that time.  (*Id.*)  Plaintiff's contention regarding the
allegedly unwarranted delay is primarily based on a database screenshot that he

---

[2] An additional 53 responsive pages were identified but were referred to other agencies and are not at
issue in this case.  (Def.'s Mem. of P&A in Supp. of Def.'s Mot. ("Def.'s Mem."), ECF No. 17-2, at 1
n.1.)

received as part of the initial release of documents.  This document, which appears to be a summary of Plaintiff's asylum application, states:  "CURRENT STATUS: ASYLUM GRANTED," "FINAL DECISION:  GRANTED," and "DATE:  9/21/2010." (Ex. E to Pl.'s Mem. ("RAPS Screenshot"), ECF No. 20-5, at 3.)  According to Plaintiff, this document and other corroborating evidence establishes that he actually was granted asylum on September 21, 2010, and therefore, USCIS violated its own governing statute and regulations by waiting more than three years to notify him of this fact.  (Pl.'s Mem. at 7-9.)  Plaintiff is seeking additional information about the delayed asylum notification, and to this end, he (and certain other family members) have maintained lawsuits under the FOIA.

        In their briefs with respect to the pending cross-motions for summary judgment, Defendant and Plaintiff dispute the applicability of the four claimed exemptions in various respects.  First, both parties argue over whether the documents that have been withheld under Exemption 5 are truly *pre*decisional, in light of Plaintiff's argument that his asylum application was approved prior to the creation of those documents.  (*See* Def.'s Mem. of P&A in Supp. of Def.'s Mot. ("Def.'s Mem."), ECF No. 17-2, at 5-9; Pl.'s Mem. at 13-17.)  Second, the parties dispute whether Defendant properly balanced the public's interest in release of the documents with the privacy interest of certain named individuals when withholding documents under Exemptions 6 and 7(C).  (Def.'s Mem. at 9-12, 14-15; Pl.'s Mem. at 17-24.)  Third, the parties disagree over whether Defendant has provided sufficient justification for its invocation of Exemption 7(E). (Def.'s Mem. at 12-15; Pl.'s Mem. at 24-28.)  Significantly, these exact same legal arguments were made in the context of a substantially identical FOIA action that

Mezerhane Gosen's daughter filed in this district at around the same time that Plaintiff filed the instant lawsuit. *See generally Mezerhane de Schnapp*, 2014 WL 4436925.

In the *Mezerhane de Schnapp* case, the Court conducted an *in camera* review and considered the applicability of the same four FOIA exemptions at issue in the instant case in the context of that asylum applicant's A-File.  In an opinion released on September 9, 2014, the Court rejected the plaintiff's contention that, when USCIS withheld documents under FOIA Exemptions 6 and 7(C), the agency ignored the important public interest served by releasing the redacted information, and the Court concluded instead that because no public interest would be served by releasing the withheld information, Exemptions 6 and 7(C) were properly applied.  *Id.* at *4-*5.  The Court also rejected the plaintiff's argument that USCIS failed to explain adequately how certain information withheld under FOIA Exemption 7(E) could lead to circumvention of the law.  *Id.* at *2-*3.  Nevertheless, despite finding in favor of USCIS with regard to Exemptions 6, 7(C), and 7(E), the Court also found that it could not reach any firm conclusion with respect to the applicability of Exemption 5.  *Id.* at *9.  This was because of the Court's recognition that, even though the withheld information appeared to fall within the deliberative process privilege, the plaintiff had provided sufficient evidence to cast doubt on the appropriateness of the invocation of that exemption.  *Id.*  Ultimately, as a result of the same core factual dispute that is at issue here—*i.e.*, the parties' disagreement regarding when the plaintiff's asylum decision was made and thus whether the documents withheld under Exemption 5 are truly predecisional—the Court decided to deny the parties' cross-motions for summary judgment.

Although neither party to the instant action had the benefit of the analysis and conclusions of the Court in *Mezerhane de Schnapp* at the time that they briefed the summary judgment motions at issue here, that case is clear and direct precedent for this Court's analysis of the pending cross-motions.  As explained fully below, this Court has reviewed *in camera* the 77 contested pages in this matter, and it finds no reason to depart from the reasoning in *Mezerhane de Schnapp*.  Therefore, this Court substantially adopts the analysis of the *Mezerhane de Schnapp* opinion, and likewise concludes that, although USCIS is entitled to summary judgment as to Exemptions 6, 7(C), and 7(E), a genuine dispute of material fact precludes the granting of summary judgment as to Exemption 5.[3]

## II.   LEGAL STANDARDS

### A.  The FOIA And Exemptions 5, 6, and 7

The FOIA "was enacted to facilitate public access to Government documents" in order to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (internal quotation marks and citation omitted).  Pursuant to the text of the FOIA, "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person."  5 U.S.C.

---

[3] This Court also concludes, after careful *in camera* consideration of the relevant redactions, that all reasonably segregable information has been released.  *See, e.g.*, *Espino v. DOJ*, 869 F. Supp. 2d 25, 30 (D.D.C. 2012) (finding after *in camera* review that all reasonably segregable information was released); *Judicial Watch, Inc. v. Dep't of Treasury*, 802 F. Supp. 2d 185, 206 (D.D.C. 2011) (finding after *in camera* review that information should have been released because it was reasonably segregable); *Jefferson v. Reno*, No. CIV.A. 96-1284 (GK), 2001 WL 34373012, at *2 (D.D.C. Aug. 27, 2001) (using *in camera* review "primarily for the identification of reasonably segregable portions that must be disclosed").  Thus, this Court rejects Plaintiff's follow-on argument that, even if Defendant was justified in withholding some portions of the relevant documents, Defendant failed to segregate and produce reasonably segregable information, as FOIA requires.  (*See* Pl.'s Mem. at 33-34); *see also* 5 U.S.C. § 552(b).

§ 552(a)(3)(A).  Notably, despite the clear "prodisclosure purpose" of the statute, *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004), the FOIA also contains nine exemptions—*i.e.*, specified circumstances under which disclosure is not required, 5 U.S.C. § 552(b).  These exemptions "must be narrowly construed."  *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted).  Moreover, "the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents."  *Ray*, 502 U.S. at 173.

Exemption 5 covers "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]"  5 U.S.C. § 552(b)(5).  "Exemption 5 'incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant'—including the presidential communications privilege, the attorney-client privilege, the work product privilege, and the deliberative process privilege—and excludes these privileged documents from FOIA's reach."  *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (citing *Baker & Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 321 (D.C. Cir. 2006)).

Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]"  5 U.S.C. § 552(b)(6).  Echoing this language, Exemption 7(C) exempts from disclosure law enforcement information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  *Id.* § 552(b)(7)(C).  In order to determine whether information was validly withheld under Exemptions 6 or 7(C), the Court must balance the privacy interests of the affected party with the public's interest in the information.  *See Favish*, 541 U.S. at 172.  And because

"the standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records compiled for law enforcement purposes is somewhat broader than the standard applicable to personnel, medical, and similar files[,]" *DOJ v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 756 (1989), if a document was properly redacted under Exemption 7(C), then it was also properly redacted under Exemption 6. *See id.*

Exemption 7(E), like 7(C), only applies to documents that contain law enforcement information. Specifically, Exemption 7(E) applies to documents that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[.]" 5 U.S.C. § 552(b)(7)(E).

### B. Summary Judgment In FOIA Cases

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of proving that it is entitled to summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In the FOIA context, a district court reviewing a motion for summary judgment conducts a de novo review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under the FOIA. *See* 5 U.S.C. § 552(a)(4)(B); *see also In Def. of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 83, 92–93 (D.D.C. 2008). Because the court must analyze all underlying facts and inferences in the light most favorable to the FOIA requester, *see Willis v. DOJ*, 581 F. Supp. 2d 57, 65 (D.D.C. 2008), summary judgment for an agency is only appropriate

after the agency proves that it has "fully discharged its [FOIA] obligations[,]" *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996).

The agency may prove compliance with the FOIA through affidavits from officials within the relevant agency. *See Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); *Robinson v. Att'y Gen. of U.S.*, 534 F. Supp. 2d 72, 78 (D.D.C. 2008). Such affidavits alone may justify a grant of summary judgment so long as they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted).

## III.   ANALYSIS

On October 16, 2014, this Court ordered USCIS to produce the 77 disputed pages for *in camera* review. The produced documents all come from Plaintiff's A-File and reflect many different stages of the asylum-application review process. Of these 77 pages, 47 have been withheld in their entirety and 30 have been partially withheld. Moreover, nearly every document among the 77 disputed pages contains information withheld on the basis of Exemptions 6, 7(C), and 7(E), but only 22 pages contain information that has been withheld on the basis of Exemption 5.

It is important to note, as a general matter, that the corpus of documents at issue here is significantly larger than the set of documents that were in dispute in the *Mezerhane de Schnapp* case. *See Mezerhane de Schnapp*, 2014 WL 4436925, at *1, *5 (noting that only 47 pages remained in dispute and only 5 pages were withheld on the basis of Exemption 5). However, the court in that case addressed precisely the same

legal arguments that are at issue here in exactly the same context, and it determined that

Exemptions 6, 7(C), and 7(E) were properly applied but a factual dispute prevented any

such conclusion as to Exemption 5.  As explained below, this Court's *in camera* review

of the 77 documents at issue here yields the same result.[4]

### A.  The Withholdings USCIS Made Pursuant To FOIA Exemptions 6 And 7(C) Were Proper

As noted above, information is properly withheld under both Exemptions 6 and

7(C) so long as the public's interest in disclosure does not outweigh an identified

individual's interest in privacy.  *Favish*, 541 U.S. at 172.  It is well established that

Exemption 6 pertains to information that is properly characterized as "personnel . . .

and similar files," while Exemption 7(C) applies when substantially the same kind of

private, identifying information is contained in law enforcement documents.  Here,

among the 77 pages of redacted material at issue, almost all of the redactions made

under Exemptions 6 and 7(C) shield logistical details about USCIS or other government

employees.  For example, the names of the various asylum officers that are identified as

the source of the documents are consistently removed.  (*See, e.g.*, *Vaughn* Index, Ex. I

---

[4] In a document Plaintiff filed purportedly as a "response" to Defendant's submission of the disputed records for *in camera* review pursuant to this Court's order, Plaintiff argues that this Court should not blindly follow the ruling in *Mezerhane de Schnapp* because of important factual differences between the two cases. (Pl.'s Resp. to Def.'s Submission for In Camera Review ("Pl.'s Resp. to Def.'s Submission"), ECF No. 30.)  To begin with, Plaintiff notes, "the category, breadth, and contents of documents withheld, are likely substantially different" in the two cases.  (*Id.* at 2.)  While it is true that there are some differences in the documents withheld in each case and that those differences require this Court to undertake an individualized evaluation of the documents, *Mezerhane de Schnapp* still has precedential value because the same legal arguments are brought to bear on very similar documents that have been withheld for essentially identical reasons.  Plaintiff also seeks to distinguish this case from *Mezerhane de Schnapp* by contending that the processing of his application "was riddled with procedural irregularities"—seemingly more than were present in the processing of his daughter's application.  (*Id.* at 3.)  The one example that Plaintiff cites as evidence of these irregularities—the presence of a screenshot suggesting his asylum application was granted in September of 2010—has been duly considered and forms an important part of this Court's analysis of Exemption 5.  *See* Part III.C *supra*.

to Def.'s Mem., ECF No. 17-7, at 1, 3, 4-5, 7, 28, 29, 153, 157, 257.)[5]  So, too, those officers' signatures and identifying database codes have been redacted.  (*See, e.g.*, *id.* at 1, 28, 83-108, 153, 159, 167, 169, 257.)  There are a small number of documents in which names and identifying information (such as addresses) of third parties that are not USCIS or other government officials are also withheld under Exemptions 6 and 7(C); these redactions appear to relate to information generated in the context of criminal background checks.  (*See, e.g.*, *id.* at 7-9, 10-21, 83-108, 129-33.)

Plaintiff concedes that many of the documents at issue contain information that Exemption 6 protects, but he generally disputes the applicability of Exemption 7 on the grounds that USCIS needs—and lacks—"a law enforcement mandate."  (Pl.'s Mem. at 26 (internal quotation marks omitted).)[6]  As the court in *Mezerhane de Schnapp* noted in response to an identical argument, the argument that an agency must have "a law enforcement mandate" to invoke Exemption 7 is entirely unsupported.  *See Mezerhane de Schnapp*, 2014 WL 4436925, at *3.  Moreover, and in any event, the sorts of files at issue here, as in *Mezerhane de Schnapp*, "are involved with the enforcement of a statute or regulation within [USCIS's] authority and . . . were compiled for adjudicative or enforcement purposes[.]"  *Id.* (internal quotation marks and citation omitted).  Indeed, courts regularly find Exemption 7 applicable to USCIS documents.  *See, e.g.*, *Techserve Alliance v. Napolitano*, 803 F. Supp. 2d 16, 29 (D.D.C. 2011) (finding Exemption 7(E) applicable to USCIS documents); *Skinner v. DOJ*, 806 F. Supp. 2d 105, 113-16 (D.D.C. 2011) (finding Exemptions 7(C) and 7(E) applicable to USCIS documents).

---

[5] All *Vaughn* Index page numbers refer to the "Bates Number" that the index uses to identify specific pages.

[6] Although Plaintiff makes this argument only in the context of his discussion of Exemption 7(E), it applies equally well to the entirety of Exemption 7.

Having dispensed with Plaintiff's erroneous threshold assertion about the blanket inapplicability of Exemption 7, this Court now focuses on the particular documents that USCIS withheld in the context of the instant case on Exemption 6 and 7(C) grounds, against the backdrop of the legal principles that apply to those FOIA exemptions. It is well established that whether information was properly withheld under Exemptions 6 or 7(C) depends, first, on whether there is a privacy interest at stake, and second, on whether the public's interest in the information outweighs this privacy interest. As noted above, most of the relevant redactions within the 77 pages concern identifying information about USCIS or other government employees, such as their name, signature, and personal database code, and the significant privacy interest at stake when it comes to the identifying information of government employees in the context of FOIA requests is beyond dispute. *See Brown v. FBI*, 873 F. Supp. 2d 388, 404 (D.D.C. 2012) ("Names and/or identifying information are often granted categorical exemption under 7(C)."); *Keys v. DHS*, 510 F. Supp. 2d 121, 128 (D.D.C. 2007) (recognizing significant privacy interest of public servants). Moreover, where the details of third parties other than law enforcement officials appear in the context of law enforcement reports and background checks, the D.C. Circuit has recognized that the third party has a substantial privacy interest in not having his or her name associated with a law enforcement file. *See Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990).

The real dispute between the parties here turns on whether Mezerhane Gosen has identified any public interest in the disclosure of the redacted information, and if so, whether that interest outweighs the privacy interest identified above such that it was improper for the agency to invoke Exemptions 6 and 7(C) to withhold the information. "[T]he justification most likely to satisfy Exemption 7(C)'s public interest requirement

is that the information is necessary to show the investigative agency or other responsible officials acted negligently or otherwise improperly in the performance of their duties." *Favish*, 541 U.S. at 173.  Accordingly, Mezerhane Gosen maintains that releasing this information will reveal that USCIS violated its own governing statutes and regulations by, for example, unreasonably delaying notification of his asylum determination, or by unlawfully conducting background checks after making its asylum determination.  (Pl.'s Mem. at 20-24.)  However, as in *Mezerhane de Schnapp*, this Court need not delve into which of Plaintiff's suggested public interests, if any, may outweigh the privacy interest USCIS has identified because the documents themselves simply do not shed any light on this matter—Exemptions 6 and 7(C) have been used here to redact only names and some identifying information, and nothing that could possibly help to prove or disprove USCIS's alleged misconduct.  *See* 2014 WL 4436925, at *4 ("Quite simply, the withheld information neither confirms nor refutes Mezerhane's allegations of misconduct.").  Because these redactions do not appear to implicate any public interest at all, USCIS properly applied Exemptions 6 and 7(C). *See Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989) ("We need not linger over the balance; something, even a modest privacy interest, outweighs nothing every time.").[7]

## B.  USCIS Was Justified In Withholding Certain Information Pursuant To Exemption 7(E)

Exemption 7(E) applies to law enforcement information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would

---

[7] Plaintiff argues that the present case differs from *Mezerhane de Schnapp* because it alleges a different, and seemingly more serious, form of government misconduct and therefore implicates a different (and potentially stronger) public interest in the information.  (Pl.'s Resp. to Def.'s Submission at 3-4.)  Even if true, this contention is irrelevant.  The nature and seriousness of the alleged misconduct has no bearing on this Court's factual finding that the information withheld under Exemptions 6 and 7(C) does not relate at all to whether or not USCIS engaged in the misconduct.

disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[.]"  5 U.S.C. § 552(b)(7)(E).  "The D.C. Circuit has held that an agency may withhold information from disclosure where releasing such information would provide insight into its investigatory or procedural techniques."  *Techserve Alliance*, 803 F. Supp. 2d at 28-29; *see also Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting that Exemption 7(E) offers "a relatively low bar for the agency to justify withholding" information).

Based on *in camera* review of the contested documents, this Court finds that USCIS has redacted two broad types of information under Exemption 7(E):  (1) database information such as codes and descriptions of documents (*see e.g.*, *Vaughn* Index at 4-6, 7-9, 10-21, 30-35, 83-108, 110, 129-34, 167, 169), and (2) details about how USCIS processes asylum cases (*see e.g.*, *Vaughn* Index at 2, 3, 28, 29, 153-56, 158-59).  This kind of information is precisely "the type[] of information contemplated by the exemption, and . . . properly is withheld under Exemption 7(E)."  *Ortiz v. DOJ*, No. 12-1674, 2014 WL 4449686, at *9 (D.D.C. Sept. 9, 2014).  Indeed, many courts have upheld the government's withholding of the same sort of information from the same databases that are at issue in this case.  *See, e.g.*, *Skinner v. DOJ*, 893 F. Supp. 2d 109, 114 (D.D.C. 2012) ("The Court concludes that the USCIS's decision to redact the TECS access codes is appropriate under Exemption 7(E)."), *aff'd sub nom.*, *Skinner v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 12-5319, 2013 WL 3367431 (D.C. Cir. May 31, 2013); *McRae v. DOJ*, 869 F. Supp. 2d 151, 169 (D.D.C. 2012) (finding Exemption 7(E) properly applied to information from TECS and NCIC databases).

14

Perhaps sensing the relative impenetrability of Defendant's Exemption 7(E) argument, Plaintiff mostly challenges USCIS's withholding of information about the asylum application process, noting that "USCIS has published numerous documents detailing the asylum adjudication process, so these processes are already publicly known." (Pl.'s Mem. at 28.) This argument has been raised many times in the context of Exemption 7(E) and has been rejected just as often. *See Barnard v. DHS*, 598 F. Supp. 2d 1, 23 (D.D.C. 2009) (describing this argument as "a familiar one" that "the Court again rejects"). The mere fact that some information about the asylum process is available does not automatically prevent USCIS from withholding any information about the process. *See id.* ("There is no principle of which the Court is aware that requires an agency to release all details concerning these and similar [investigatory] techniques simply because some aspects of them are known to the public.").

Plaintiff also argues that USCIS has failed to lay out the logical connection between releasing this information and the creation of a risk that law enforcement efforts will be circumvented. (Pl.'s Mem. at 26-27.) However, that logic is relatively simple—as the *Mezerhane de Schnapp* court noted, there is little doubt that the withheld information "could enlighten asylum applicants with criminal backgrounds about what sort of law enforcement information (from which databases) is consulted by USCIS during adjudication of a pending asylum application—and, of course, by logical inference, what sort of information is not consulted." *Mezerhane de Schnapp*, 2014 WL 4436925, at *2. (*See also* Def.'s Mem. at 15 (arguing that this information "would allow an individual to evade law enforcement record checks for purposes of processing an individual's immigration petition").) Consequently, USCIS has easily mounted the

"low bar" necessary to justify Exemption 7(E), and is therefore entitled to summary

judgment as to this exemption.

> **C. Because There Is A Genuine Dispute Of Fact On The Instant Record Regarding When Asylum Was Granted, Both Parties' Motions For Summary Judgment With Respect To The Exemption 5 Withholdings Must Be Denied**

Finally, this Court turns to Plaintiff's argument with respect to the 22 documents

that claim an Exemption 5 withholding, which is fairly straightforward:  if his

application was truly granted in September of 2010, as Plaintiff believes it was (rather

than November 2013, when USCIS says the asylum decision was final) then any

documents that were created after September of 2010 cannot be "predecisional" and

thus the deliberative process privilege cannot apply.  (Pl.'s Mem. at 13-17.)  *See also*

*Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) ("The deliberative

process privilege protects agency documents that are both predecisional and

deliberative."); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C.

Cir. 1980) (explaining that a document is predecisional if "it was generated before the

adoption of an agency policy" and it is deliberative if "it reflects the give-and-take of

the consultative process.").  Significantly, each of the 77 contested pages in this case is

dated on or after September 21, 2010—the specific date on which Plaintiff maintains

his asylum application was initially granted—and thus, according to Plaintiff, *none* of

the withholdings on Exemption 5 grounds in the 22 pages that contain such

withholdings are proper.

During its *in camera* review, this Court isolated and considered the 22 disputed

pages that contain Exemption 5 withholdings.  Three documents, totaling 13 pages, are

essentially written reports of asylum officers.  These reports—a statement of findings,

an application processing worksheet, and an asylum officer's referral assessment—each

contain the officer's summary of Plaintiff's application as well as a recommendation as to how to proceed. (*See Vaughn* Index at 7-9, 153-56, 257-62.) An additional four documents, totaling 4 pages, are either instructions for further processing of Plaintiff's application (in the form of a cover letter and interoffice memorandum) or requests for further processing (in the form of two emails). (*See id.* at 2, 3, 28, 29.) Two documents, totaling 2 pages, are really the same document—a quality assurance referral sheet—just completed on two different dates. This sheet contains a checklist of factors that may trigger further review of Plaintiff's application, and Exemption 5 has been invoked to withhold which of the fourteen boxes have been marked. (*See id.* at 1, 157.) Finally, there is a background check, totaling 3 pages, in which Exemption 5 has been used to withhold information received from various law enforcement officers about Plaintiff's application. (*See id.* at 4-6.) In accordance with Defendant's Exemption 5 contentions, none of these documents suggest that Plaintiff's application was granted in September of 2010. Furthermore, each of these documents reflect the personal opinion of the asylum officer (or other government officials in the case of the background check) and many contain clear recommendations. As such, the Court's review of these documents, along with the affidavits that USCIS has submitted, generally supports USCIS's position that these 22 documents were properly redacted pursuant to Exemption 5. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (holding that "deliberative process covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated" (internal quotation marks and citation omitted)).

However, Plaintiff points to specific evidence that does call into question USCIS's claim that Mezerhane Gosen's asylum application was granted in November of 2013, and thus that the 22 documents are predecisional.  First, and most significantly, there is the cryptic database screenshot that is, apparently, from USCIS's Refugees, Asylum and Parole System (RAPS), a database which keeps track of asylum applications. (Decl. of Varsenik Papazian ("Papazian Decl."), ECF No. 24-1, ¶ 6.)  As noted above, this screenshot, which was contained in USCIS's initial release of documents in response to Plaintiff's FOIA request, identifies Plaintiff and then states "CURRENT STATUS:  ASYLUM GRANTED" and "FINAL DECISION:  GRANTED." (RAPS Screenshot at 3.)  Next to the second of these statements, the document has "DATE:  9/21/2010."  (*Id.*)[8]

Second, Plaintiff references an incident in August of 2013, in which Mezerhane Gosen's son-in-law—whose asylum application relied on Mezerhane Gosen's claim of political persecution—was told by an immigration official that he should have applied for travel documentation that is only available to a person whose asylum application has been granted, even though the son-in-law had not, at that time, received any word that he had been granted asylum.  (Affidavit of Roberto Andres Schnapp Gabor, Exh. F to Pl.'s Mem., ECF No. 20-5, at 10.)  The Court considered precisely this evidence in *Mezerhane de Schnapp* and reasoned that this evidence was corroborated by the record

---

[8] USCIS argues that this screenshot reflects the proposed decision of the asylum officer assigned to Plaintiff's case, not a final decision (Def.'s Reply at 3; Papazian Decl. ¶ 11.), because certain applications, apparently including Plaintiff's, are subject to further review by "Asylum Headquarters." (Papazian Decl. ¶¶ 8-9.)  In this regard, despite the plain text of the screenshot, USCIS maintains that the screenshot was printed and included in Plaintiff's A-File at some point *after* the asylum officer had made his or her recommendation but *before* Asylum Headquarters reviewed the decision, and therefore, the document merely reflects the asylum officer's proposed decision.  (Def.'s Reply at 3; Papazian Decl. ¶ 12.)

and was inconsistent with the government's suggested timeline.  2014 WL 4436925, at *6-*7.

This Court also takes judicial notice of a third, and related, piece of evidence that was offered to cast doubt on USCIS's Exemption 5 justification in *Mezerhane de Schnapp*—in 2013, a customs agent reportedly told the attorney of Mezerhane Gosen's son-in-law (who is also the attorney of Mezerhane Gosen in this matter) that his asylum application had been granted in 2010. *See Mezerhane de Schnapp*, 2014 WL 4436925, at *7 (describing contents of affidavit).[9]  It is true that the plaintiff here has not offered this latter piece of evidence in the instant context, but this evidence also *has not been refuted*, even in the face of the *Mezerhane de Schnapp* court's specific assertion that "Mezerhane's evidence stands virtually unchallenged—[*i.e.*,] USCIS does not deny that the conversations took place as remembered by the various affiants[.]" 2014 WL 4436925, at *8.

Even if the customs agent evidence is set aside, this Court agrees with the *Mezerhane de Schnapp* court's statement that, "on the present record, one can come to more than one conclusion about when USCIS made a decision on Mezerhane's asylum application and, in turn, whether these documents are predecisional, and protected by the deliberative-process privilege."  Put another way, although the documents withheld appear to be deliberative, Plaintiff has raised sufficient doubt about the timing of the asylum decision such that it cannot be established one way or the other, based on the current record, that the withheld documents are predecisional.  Consequently, this Court

---

[9] Although this evidence was not presented in this case, it arises from a sworn affidavit contained in public court documents.  As such, it appears that this Court is free to take judicial notice of this affidavit.  *See Vince v. Mabus*, 956 F. Supp. 2d 83, 88 (D.D.C. 2013) ("A court may take judicial notice of public records from other proceedings."); *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 171 (D.D.C. 2010) (finding scope of judicial notice "extends to judicial notice of court records in related proceedings").

has no choice but to join the court in *Mezerhane de Schnapp* in denying both motions for summary judgment as to Exemption 5.

## IV.   CONCLUSION

USCIS has adequately justified its invocation of Exemptions 6, 7(C), and 7(E); the applicability of Exemption 5 is all that genuinely remains in dispute.  Based on this Court's *in camera* review of the 22 pages that contain Exemption 5 redactions, at least some of the redacted information in those 22 pages is also withheld under other exemptions.  This Court encourages the parties to engage in further negotiations regarding the remaining contested documents.  If such negotiations are unavailing, the parties will be required to refile their motions for summary judgment with respect to the Exemption 5 withholdings, along with any additional information that will shed light on the remaining factual dispute.

DATE:  December 4, 2014                    *Ketanji Brown Jackson*

                                          KETANJI BROWN JACKSON
                                          United States District Judge